**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMIL COOPER,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:12-cv-1186** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF CORRECTIONS, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

**I.    BACKGROUND**

Pro se Plaintiff Jamil Cooper ("Plaintiff"), initiated the above-captioned action by filing a complaint in this Court pursuant to 42 U.S.C. § 1983 on June 21, 2012 (Doc. No. 1), and, subsequently, an amended complaint on March 8, 2013 (Doc. No. 20), against the Pennsylvania Department of Corrections ("PA DOC"); John Wetzel ("Wetzel"), Secretary of the PA DOC; Marirosa Lamas ("Lamas"), Superintendent of the State Correctional Institution Rockview in Bellefonte, Pennsylvania ("SCI Rockview"); Sergeant Strohm ("Strohm"), a corrections officer at SCI Rockview; Kurt Granlund ("Granlund"), a unit manager at SCI Rockview; and Sherman ("Sherman"), a corrections officer at SCI Rockview.  Plaintiff alleged that on September 6, 2011, Defendant Sherman verbally harassed him when he was assisting a blind inmate, Diaz Cruz, in drafting an administrative grievance.  (Doc. No. 20 ¶¶ 21-23.)  Plaintiff argued that shortly thereafter, Defendants Sherman and Strohm denied him a pass for the library because he had assisted the inmate in preparing the grievance.  (Id. ¶ 26.)  Plaintiff further alleged that on September 7, 2011, he received a misconduct from Defendant Sherman in retaliation for the assistance he provided to the blind inmate.  (Id. ¶¶ 35-36.)  Plaintiff claimed that he was denied due process during the hearing on this misconduct.  (Id. ¶ 36.)  Plaintiff was then found guilty of

being in a restricted area and was sanctioned to fourteen (14) days of cell restriction, which he claimed resulted in a reduction of his library hours from four (4) hours per day to four (4) hours per week. As a result, Plaintiff allegedly had to request continuances in an action that was pending before the Superior Court of Pennsylvania. (Id. ¶¶ 40, 62.) Finally, Plaintiff alleged that Defendants Lamas and Granlund denied the appeal he filed from the misconduct, and that Defendant Granlund conspired with Defendants Sherman and Strohm to "cover up" their actions. (Id. ¶¶ 43, 45.) Based on these events, Plaintiff asserted claims of retaliation, denial of due process, and defamation of character in violation of his rights under the First and Fourteenth Amendments to the United States Constitution.

On May 9, 2013, Defendants filed a motion to dismiss Plaintiff's amended complaint (Doc. No. 29), which the Court granted in part and denied in part in an Memorandum and Order filed on April 21, 2014 (Doc. Nos. 41, 42). Specifically, the Court granted the motion to dismiss with respect to all of Plaintiff's claims, except for his retaliation and due process claims.[1] (Doc. No. 42.)

On May 9, 2014, Defendants filed an answer to Plaintiff's remaining claims. (Doc. No. 43.) Plaintiff subsequently filed a motion to amend the judgment (Doc. No. 48), and a brief in support of his motion (Doc. No. 49). He also filed a motion for preliminary injunction (Doc. No. 44) and brief in support of that motion (Doc. No. 45). In a Memorandum and Order entered on December 19, 2014, the Court denied Plaintiff's motions. (Doc. Nos. 57, 58.)

Defendants filed a motion for summary judgment as to Plaintiff's remaining claims on December 8, 2014 (Doc. No. 55), and subsequently filed their supporting materials on December

---

[1] The Court characterized Plaintiff's due process claim as a due process retaliation claim pursuant to Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002). (Doc. No. 41 at 8.)

22, 2014 (Doc. Nos. 59, 60, 61). December 29, 2014, Plaintiff filed a notice of appeal (Doc. No. 62), seeking to appeal the Court's December 19, 2014 Memorandum and Order. He subsequently filed a motion to postpone summary judgment (Doc. No. 64), and a brief in support (Doc. No. 65), as well as his materials opposing Defendants' motion for summary judgment (Doc. Nos. 68, 69, 70, 71).

On August 17, 2015, the United States Court of Appeals for the Third Circuit dismissed Plaintiff's appeal for lack of appellate jurisdiction. (Doc. No. 73.) In a Memorandum and Order filed on December 21, 2015, this Court granted Plaintiff's motion to postpone summary judgment and deemed his brief in opposition, counterstatement of facts, and exhibits to be timely filed. (Doc. Nos. 76, 77.) On March 31, 2016, the Court dismissed Plaintiff's claims against the PA DOC with prejudice[2] (Doc. No. 81) and also granted Defendants' motion for summary judgment (Doc. Nos. 82, 83).

On April 15, 2016, Plaintiff filed a notice of appeal. (Doc. No. 85.) On November 21, 2018, the Third Circuit vacated in part and affirmed in part this Court's grant of summary judgment to Defendants. Cooper v. Pa. Dep't of Corr., 756 F. App'x 130, 131 (3d Cir. 2018). Specifically, the Third Circuit noted that in Wisniewski v. Fisher, 857 F.3d 152 (3d Cir. 2017), it concluded that an Inmate Legal Reference Aide responsible for assisting other inmates with the filing of legal documents and grievances had engaged in constitutionally protected conduct pursuant to his job duties. See id. at 133-34. The Third Circuit, therefore, vacated this Court's grant of summary judgment on Plaintiff's retaliation claim and directed the Court to consider whether the role of Block Representative is like that of an Inmate Legal Reference Aide. See id.

---

[2] The Court observed that the Clerk of Court has not yet terminated the PA DOC from this action. Because the Court dismissed Plaintiff's claims against the PA DOC with prejudice, the Court will direct the Clerk of Court to terminate the PA DOC from this action.

at 134.  Additionally, the Third Circuit affirmed the grant of summary judgment on Plaintiff's retaliation claim as to his complaints about Defendant Granlund.  See id. at 135.  Finally, the Court of Appeals vacated the grant of summary judgment on Plaintiff's due process claim in light of its conclusion with respect to Plaintiff's retaliation claim regarding his role as a Block Representative.  See id.

Following the Third Circuit's opinion, the Court reopened this action in an Order filed on January 11, 2019, and directed Defendants to file, within twenty-one (21) days, a renewed motion for summary judgment addressing the remanded issues.  (Doc. No. 92.)  Defendants filed their second motion for summary judgment (Doc. No. 93) and supportive materials (Doc. No. 94, 95, 96) on February 1, 2019.  On February 28, 2019, Magistrate Judge Carlson granted Plaintiff an extension of time until April 1, 2019 to file his opposing materials, and directed that Defendants file a reply brief on or before April 15, 2019.  (Doc. No. 103.)  Plaintiff timely filed his brief in opposition (Doc. No. 104), a counterstatement of material facts (Doc. No. 105), another brief in opposition (Doc. No. 106), and affidavits (Doc. No. 107).  To date, Defendants have not filed a reply brief.  Accordingly, because the time period for filing a reply brief has expired, Defendants' motion for summary judgment is ripe for resolution.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  Id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party.  Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. Id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, Civ. No. 09-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, Civ. No. 02-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

## III.  DISCUSSION

### A.  Undisputed Facts[3]

---

[3] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Here, Plaintiff has filed a response to Defendants' statement of material facts in compliance with M.D. Pa. L.R. 56.1. Accordingly, the

### 1.     Plaintiff's September 6, 2011 Misconduct

During the relevant time period, Plaintiff was incarcerated at SCI Rockview.  (Doc. No. 94 ¶ 1.)  On September 6, 2011, he was issued Misconduct B384784.[4]  (Id. ¶ 2.)  In this misconduct, Plaintiff was charged with refusing to obey an order and being present in an unauthorized area.[5]  (Id. ¶ 3.)

Under PA DOC policy DC-ADM 801, Plaintiff was eligible for informal resolution of his misconduct charges because they were non-violent and low level in nature.  (Id. ¶ 7.)  Section 2 of that policy "provides that for less serious charges and other factors, the Shift Commander can decide to allow the charge to be informally resolved; an informal resolution confers a benefit upon the inmate because the available sanctions for such a charge are far less stringent."[6]  (Id. ¶ 10.)  The policy provides that the Unit Manager must meet with the inmate within seven (7) working days of the charges being filed to dispose of them informally.  (Id. ¶ 11.)  Witnesses are

---

Court sets forth the undisputed facts above with footnotes setting forth the parties' relevant factual disputes.

[4] Defendants assert that Defendant Strohm issued this misconduct.  (Doc. No. 94 ¶ 2.)  Plaintiff contends that Defendant Sherman "maliciously issued the Misconduct with full intent to punish" him."  (Doc. No. 105 ¶ 2.)

[5] Defendants contend that this misconduct was issued after "all inmates on Plaintiff's housing unit were given a direct order to clear the range and return to their cells."  (Doc. No. 94 ¶ 4.)  According to them, Plaintiff "was seen continuing to loiter on the unit, ignoring the order to return to his cell."  (Id.)  Plaintiff ignored a second order to return to his cell and "approached the control bubble with a request to go to the library."  (Id.)  Plaintiff returned to his cell after being given another direct order to do so.  (Id.)

Plaintiff maintains that he never received an order to return to his cell.  (Doc. No. 105 ¶ 4.)  He contends that Defendants Sherman and Strohm "both state that they do not [remember] the Plaintiff ever coming to the [c]ontrol bubble for a pass to go to the library."  (Id.)

[6] Plaintiff admits that this is the operative policy, but denies that the Shift Commander ever saw Misconduct No. B384784 "[b]ecause of the lack of the shift commander's signature that is a requirement for any misconduct to be served."  (Doc. No. 105 ¶ 10.)

not permitted during this meeting, and "the inmate is not required to submit his version of events in writing, but may explain the same orally."[7]  (Id.)

Plaintiff and Defendant Granlund signed an Informal Resolution Action.[8]  (Id. ¶¶ 13, 15.) Plaintiff then received fourteen (14) days of cell restriction as a sanction.  (Id. ¶ 16.)  He appealed this sanction, arguing that "his informal resolution process did not include findings of fact and that the Unit Manager exceeded his authority in sanctioning Plaintiff to 14 days of cell restriction."  (Id. ¶ 17.)  On September 14, 2011, the Program Review Committee ("PRC") upheld the outcome of the informal resolution.  (Id. ¶ 18.)  The PRC indicated that "Plaintiff [was] conflating the process utilized during a formal misconduct hearing before a hearing examiner, in which an inmate is served with a misconduct and findings of fact are issued, and the informal resolution process, in which an inmate is not served with the misconduct and no findings of fact are issued."[9]  (Id.)  Plaintiff appealed to Defendant Lamas and the Office of the Chief Hearing Examiner.  (Id. ¶¶ 19, 21.)  Both Lamas and the Chief Hearing Examiner upheld the result of the informal resolution.  (Id.)

---

[7] Plaintiff again admits that this is the policy that governs, but denies that he experienced any of these events.  (Id. ¶ 11.)

[8] Plaintiff maintains that Defendant Granlund ordered him to sign the Informal Resolution Action form and that he did not have a choice about whether to do so.  (Id. ¶ 15.)

[9] Plaintiff contends that DC-ADM 801 provides that misconduct charges must be served upon an inmate the day they are issued and that the policy makes no distinction between formal and informal misconducts in that regard.  (Id. ¶ 18.)

### 2. Plaintiff's September 7, 2011 Misconduct

On September 7, 2011, Plaintiff was issued Misconduct B384789.[10] (Id. ¶ 22.) This misconduct charged Plaintiff with refusing to obey an order and being present in an unauthorized area.[11] (Id. ¶ 23.) Plaintiff appeared for a misconduct hearing on September 9, 2011. (Id. ¶ 27.) He pled guilty to the charge of being present in an unauthorized area, but not guilty to the charge of refusing to obey an order. (Id.) The hearing examiner accepted Plaintiff's guilty plea as to the charge of being present in an unauthorized area and dismissed the other charge. (Id.) The examiner also sanctioned Plaintiff to fifteen (15) days loss of "block out." (Id.) Plaintiff appealed this decision, arguing that the misconduct "was retaliatory in nature," but his appeals were denied. (Id. ¶ 28.)

### 3. Facts Regarding Legal Reference Aide and Block Representative Positions

Section 2 of DC-ADM 007 sets forth information about the selection, duties, training, and compensation for Legal Reference Aides.[12] (Id. ¶ 30.) Legal Reference Aides are chosen based upon the following criteria:

> the inmate cannot be found guilty of a Class 1 misconduct during preceding nine months, the inmate must have served at least six months at a state prison, the inmate

---

[10] Defendants assert that Defendant Strohm issued this misconduct. (Doc. No. 94 ¶ 22.) Plaintiff maintains that Defendant Sherman issued the misconduct. (Doc. No. 105 ¶ 22.)

[11] Defendants maintain that at 3:40 p.m. on September 7, 2011, Defendant Strohm ordered all inmates to "clear the range and return to their cells." (Doc. No. 94 ¶ 24.) "Plaintiff was again noticed loitering in defiance of the order to return to his cell." (Id.) Plaintiff was given another direct order to return to his cell. (Id.)
    Plaintiff contends that he was not acting in defiance of an order given by Defendant Strohm. (Doc. No. 105 ¶ 24.) He asserts that an order for all inmates to return to their cells was never given. (Id. ¶ 25.)

[12] Plaintiff argues that DC-ADM 007 was not in place during the times and dates referenced in his amended complaint. (Id. ¶¶ 30-33.)

must hold a high school diploma or GED equivalent, the inmate must have a high school reading level, the inmate must have good communication skills and a command of the English language, the inmate must have a desire to work in the library and ability to establish rapport with people, the inmate must have moderate typing skills, the inmate must have the ability to learn legal research skills, [and] the inmate must have the appropriate custody level and be approved by the facility Corrections Library.

(Id. ¶ 32.)  Legal Reference Aides perform the following duties:

organize [and] maintain the law library, assist the Corrections Librarian in filing and supplementing the legal collection, assist inmates with the use of legal digests, case reporters and electronic resources to locate state and federal cases, assist inmates with the use of indexes, statutory and regulatory compilations to locate state and federal statutes, locate rules governing procedure before state and federal courts and administrative agencies, locate useful forms in the preparation of pleadings and other documents to be filed before state and federal courts, complete logs detailing the work they have performed.

(Id. ¶ 33.)  Legal Reference Aides, however, are prohibited from providing legal advice and

drafting documents for inmates.  (Id. ¶ 34.)

On September 6, 2011, when Plaintiff received the first misconduct, he was working in

his role as a Block Representative.[13]  (Id. ¶ 35.)  A Block Representative is not an official inmate

job within the DOC.  (Id. ¶ 36.)  The DOC does not have an official document outlining the

qualifications, selection process, and duties of a Block Representative, and the term does not

appear in DOC or institutional policy.[14]  (Id. ¶ 37.)  AT SCI Rockview, the position is voluntary.

(Id. ¶ 38.)  Block Representatives are responsible for attending meetings "where the Inmate

General Welfare Fund ('IGWF') is discussed to provide inmate input into the expenditure of

_____

[13] Defendants maintain that Plaintiff contends that he was also working in this role on September 7, 2011, when the second misconduct was issued.  (Doc. No. 94 ¶ 35.)  Plaintiff, however, asserts that he was carrying out his duties as Block Representative only on September 6, 2011.  (Doc. No. 105 ¶ 35.)

[14] Plaintiff maintains that counsel for Defendants described the Block Representative position during oral argument before the Third Circuit.  (Id. ¶ 37.)

those funds." (Id. ¶ 39.) Block Representatives may "also bring to the attention of staff general complaints that inmates on their housing units have, including faulty equipment like water fountains, visiting room accommodations, inconsistent meal times, etc."[15] (Id. ¶ 40.)

### B. Defendants' Motion for Summary Judgment

#### 1. Plaintiff's First Amendment Retaliation Claim

As noted above, Plaintiff alleges that Defendants Sherman and Strohm retaliated against him for assisting a blind inmate with writing a grievance in his capacity as Block Representative by issuing two misconduct reports against him. Defendants assert that they are entitled to summary judgment on this claim because Plaintiff's job duties as a Block Representative are not protected conduct and because Plaintiff has not established a causal connection between his activities and the alleged retaliatory treatment.

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." Id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." Id. (quoting Suppon v. Dadonna, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected

---

[15] Plaintiff maintains that Defendants have described only some of the responsibilities of Block Representatives. (Id. ¶¶ 39-40.) Additionally, Defendants contend that Block Representatives have "no responsibility, official or unofficial, to assist inmates with legal work, the drafting or filing of legal papers, or the drafting or filing of grievance documents." (Doc. No. 95 ¶ 41.) Plaintiff, however, asserts that counsel for Defendants discussed this function previously during oral argument before the Third Circuit. (Doc. No. 105 ¶ 41.)

conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34 (quoting Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Lape v. Pennsylvania, 157 F. App'x 491, 498 (3d Cir. 2005). Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation. See Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). If a prisoner establishes a prima facie case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. "This is often referred to as the 'same decision defense.'" Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). If the prison officials can make this showing, it defeats the retaliation claim. See Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002).

### a. Protected Activity

Defendants first assert that they are entitled to summary judgment because Plaintiff's job duties as a Block Representative are not protected conduct. Generally, prisoners do not have a First Amendment right to provide legal assistance to other prisoners. See Shaw v. Murphy, 532 U.S. 223, 230-32 (2001). However, the Third Circuit recently considered whether an inmate had engaged in protected activity by acting as an Inmate Legal Reference Aide. See Wisniewski, 857 F.3d at 156-57. In Wisniewski, the Third Circuit stated:

> Wisniewski alleged that as an Inmate Legal Reference Aide, he was responsible for assisting inmates assigned to his caseload prepare legal documents,

including grievances. In performing those duties, he obtained a copy of a draft grievance to use in assisting his assigned inmate prepare a grievance challenging the prison's yard policy. Wisniewski alleged that when prison officials discovered that this material belonged to a notoriously litigious inmate and was used in the filing of multiple other grievances challenging the same policy, they contrived misconduct charges, of which he was ultimately cleared, and engaged in a series of retaliatory actions, including arranging for his removal from his law library position. Wisniewski's amended complaint plausibly alleged that his conduct in assisting his assigned inmate prepare a grievance, which was both pursuant to his job duties and in accordance with prison regulations, was not inconsistent with legitimate penological interests, and therefore could fall within the limited First Amendment rights that prisoners retain.

Id. In light of Wisniewski, the Third Circuit vacated this Court's grant of summary judgment on Plaintiff's retaliation claim in this case and remanded the matter to consider whether his role of Block Representative is similar to an Inmate Legal Reference Aide. See Cooper, 756 F. App'x at 134.

Defendants argue that the position of Block Representative is not similar to an Inmate Legal Reference Aide. Defendants argue that the Block Representative position is voluntary and that no such position officially exists in DOC or institutional policy. (Doc. No. 95 at 9.) They maintain that Block Representatives have no responsibility to assist inmates with legal work and the drafting of legal papers and grievances. (Id. at 9-10.) They further assert that Plaintiff's sole responsibility as the unofficial Block Representative consisted of "providing inmate input into the expenditure of IGWF funds." (Id. at 10.) Finally, they maintain that Shaw "must control the Plaintiff's activities as an inmate providing unsanctioned legal services." (Id.) In support of their assertions, Defendants have submitted a copy of DC-ADM 007, the policy setting forth the position of Inmate Legal Reference Aide (Doc. No. 96-4), and a declaration from Gerald McMahon, the Deputy Superintendent for Facility Management at SCI Rockview (Doc. No. 96-5).

In response, Plaintiff has presented evidence that at times he was directed by corrections staff to assist inmates with various issues. He also presents evidence, including his own declarations and a declaration from Diaz Cruz, that on September 6, 2011, he had been directed by a correctional officer to assist Diaz Cruz with a complaint. (Doc. Nos. 106 at 20-31; 107.) Plaintiff also argues that Defendants are bound by counsel's previous statements during oral argument before the Third Circuit pursuant to the doctrine of judicial admission. (Doc. No. 106 at 9-14.)

The Third Circuit has noted that "judicial admissions are binding for the purpose of the case in which the admissions are made including appeals, and that an admission of counsel during the course of trial is binding on his client." Glick v. White Motor Co., 458 F.3d 1287, 1291 (3d Cir. 1972) (internal citation omitted). The scope of such admissions "is restricted to matters of fact which otherwise would require evidentiary proof, and does not include counsel's statement of his conception of the legal theory of a case." Id. Furthermore, such admissions are binding as long as they are unequivocal. See id. Statements made during oral argument may constitute binding judicial admissions. See, e.g., McCaskill v. SCI Mgmt. Corp., 298 F.3d 677, 680 (7th Cir. 2002) (holding that counsel's verbal admission at oral argument as to the enforceability of an agreement was a binding judicial admission just like any other formal concession made during the course of proceedings); Kohler v. Inter-Tel Techs., 244 F.3d 1167, 1170 n.3 (9th Cir. 2001) (holding that counsel's verbal admission at oral argument that the plaintiff failed to meet her burden of establishing diversity jurisdiction was a binding admission on the plaintiff); Halifax Paving, Inc. v. U.S. Fire Ins. Co., 481 F. Supp. 2d 1331, 1336 (M.D. Fla. 2007) ("Statements made by an attorney during oral argument are binding judicial admissions and may form the basis for deciding summary judgment.").

Plaintiff has provided a transcript from oral arguments before the Third Circuit.[16] (Doc. No. 106 at 39-50.) Having reviewed the audio recording of the oral argument, the Court finds that Plaintiff is correct that during oral argument, counsel for Defendants stated:

> The Block Representative has a broader range of duties, the job that the appellant was performing. It is not necessarily legal in nature or even quasi-legal in nature. He is sort of a liaison between the inmates housed in a particular housing unit and the unit management team of that unit. So his job may be on certain days to help inmates draft grievances. His job may be to meet with the unit management team on a different day to express concern that some of the inmates on that housing block have about how the meals are being delivered, or something of that nature, so it is a broader job.

(See Doc. No. 106 at 46-47.) Plaintiff argues that, given this admission, Defendants "must not be allowed the opportunity to change their argument." (Id. at 12.)

As noted above, Defendants seek to distinguish the role of Block Representative from the role of Inmate Legal Reference Aide, arguing that the Block Representative position is voluntary, rather than compensated, and that Block Representatives have no responsibility to assist inmates with legal work and the drafting of documents, including grievances. (Doc. No. 95 at 9-10.) The Court, however, is not persuaded by Defendants' arguments regarding the voluntariness of the position and whether it is compensated. In Wisniewski, the Third Circuit made no mention of whether Inmate Legal Reference Aides are compensated for their work. Likewise, the Court of Appeals made no mention of how they are chosen. Rather, it focused on the fact that Wisniewski was "assisting his assigned inmate prepare a grievance, which was both pursuant to his job duties and in accordance with prison regulations." See Wisniewski, 857 F.3d at 156.

---

[16] Plaintiff states that the Third Circuit does not provide transcripts of oral arguments but that he was provided a transcription by administrative staff at Dechert LLC, the firm that represented Plaintiff on appeal. (Doc. No. 106 at 9 n.1.)

Upon review of the relevant evidence of record and the undisputed facts, the Court finds that the role of Block Representative is not an official inmate job within the DOC, that the DOC does not have an official document outlining the qualifications, selection process, and duties of this position, and that the term Block Representative does not appear in DOC or institutional policy. (Doc. No. 94 ¶ 37.) However, when considering a motion for summary judgment, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Clement, 963 F.2d at 600; White, 862 F.2d at 59; see also Pearson v. Prison Health Serv., 850 F.3d 526, 541 n.5 (3d Cir. 2017) (noting that "when deciding a motion for summary judgment, 'the evidence of the non-movant is to be believed'" (quoting Anderson, 477 U.S. at 255)). Here, Plaintiff has submitted evidence that on September 6, 2011, he was directed to assist Diaz Cruz in preparing a grievance as part of his duties as Block Representative. (Doc. No. 106 at 27-28.) Moreover, Plaintiff is correct that counsel for Defendants admitted at oral argument before the Third Circuit that a Block Representative's job may involve assisting inmates in drafting grievances. Thus, having construed the material factual disputes in favor of Plaintiff, the Court concludes that the act of assisting inmates in preparing grievances as a Block Representative is substantially similar to the position of an Inmate Legal Reference Aide. Given this conclusion, the Court further concludes that Plaintiff was engaging in protected activity when he assisted Diaz Cruz in preparing a grievance.

### b. Adverse Action

Defendants assert that if "this Court determines that Plaintiff's activities as a block representative do establish constitutionally protected conduct as in Wisniewski, Plaintiff nonetheless fails to meet the other requirements for a retaliation claim as set forth in Rauser." (Doc. No. 95 at 10-11.) Defendants, however, do not provide any authority regarding the

adverse action element of a retaliation claim. Regardless of this deficiency in Defendants'

briefing, the undisputed facts nonetheless establish that Plaintiff received two separate

misconducts from Defendants Sherman and Strohm and ultimately received fourteen (14) days of

cell restriction and fifteen (15) days loss of "block out" as a result of those misconducts. (Doc.

No. 94 ¶¶ 17, 27.) Thus, the Court finds that Plaintiff has satisfied the second element for his

retaliation claim. See Hudson v. Carberry, No. 3:15-cv-1282, 2018 WL 6591821, at *8 (M.D.

Pa. Dec. 14, 2018) (concluding that inmate plaintiff had met second element by demonstrating

that he received misconducts).

### c. Causal Link

With respect to the third elements, Defendants contend that Plaintiff "cannot and does not

establish a sufficient causal connection between his constitutionally protected conduct (assisting

a fellow inmate with the drafting of a grievance) and the adverse action he suffered (the issuance

of Misconduct B384784)." (Doc. No. 95 at 11.) They maintain that Misconduct B384748 did

not contain charges that targeted Plaintiff's block representative activities; instead, the cause of

the adverse action was Plaintiff's "repeated refusal to follow orders issued to every inmate on the

housing unit to return to their cells." (Id.) In support of their argument, Defendants have

provided copies of the documents relating to Misconduct B384784. (Doc. No. 96-1.)

Plaintiff, however, has submitted a declaration in which he sets forth a different series of

events for September 6, 2011. (Doc. No. 106 at 26-31.) He avers that on that date, he was

assisting Diaz Cruz with his grievance when Defendant Sherman approached, looking angry, and

yelled, "So you think you know how to write people up!" (Id. at 28.) Plaintiff maintains that he

returned to his cell to retrieve his coat and a library notice that he had received so he could obtain

a library pass. (Id.) He then went to the desk and showed Defendant Strohm the notice. (Id.)

Plaintiff contends that Defendant Sherman told Defendant Strohm not to provide him with a pass "because he was on level one back writing a grievance." (<u>Id.</u>) Defendant Strohm then reportedly threw the pass into the garbage. (<u>Id.</u>) Plaintiff has also submitted a declaration from Diaz Cruz, in which Diaz Cruz states that he did not receive any misconduct or infraction despite being in the same area as Plaintiff. (<u>Id.</u> at 20.)

In light of such evidence, it is the Court's view that there exist genuine issues of material fact regarding whether the adverse action Plaintiff suffered is causally connected to his conduct in assisting Diaz Cruz with the drafting of a grievance. These issues of fact turn on a credibility assessment, a task in which this Court may not partake at the summary judgment stage. <u>See Anderson</u>, 477 U.S. at 252. Given the discrepancies in the parties' view of the events, and viewing the facts in the light most favorable to Plaintiff, a reasonable juror could conclude that Defendants issued Misconduct B384784 to Plaintiff because of his conduct in assisting a fellow inmate in drafting a grievance. Accordingly, the Court will deny summary judgment as to Plaintiff's retaliation claim.

### 2.      Plaintiff's Due Process Claim

Plaintiff also claims that he was denied due process for retaliatory reasons during his misconduct proceedings. Defendants assert that they are entitled to summary judgment because Plaintiff was not retaliated against and because he was provided with sufficient due process for both misconducts. (Doc. No. 95 at 13-15.)

The Third Circuit has recognized that "[p]rison disciplinary proceedings may . . . constitute a denial of due process in the context of a civil rights action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right." <u>Smith v. Mensinger</u>, 293 F.3d 641, 653 (3d Cir. 2002). Such a procedural

due process claim requires threshold proof that the inmate was engaged in constitutionally protected conduct. See id. (citing Sandin v. Conner, 515 U.S. 472, 486 (1995)); see also Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2002). However, even if the discipline is initiated in retaliation for a protected act, due process is satisfied where the plaintiff has an opportunity to confront and challenge the retaliatory misconduct reports. See Smith, 293 F.3d at 653-54; see also Thomas v. McCoy, 467 F. App'x 94, 97 (3d Cir. 2012) (per curiam) ("Due process is satisfied where an inmate is afforded an opportunity to be heard and to defend against the allegedly false misconduct reports."). As noted above, Plaintiff was issued two (2) misconducts, Misconduct B384784 (on September 6, 2011), and Misconduct B384789 (on September 7, 2011). The Court considers whether Plaintiff received due process for each misconduct in turn.

### a. Misconduct B384784 (September 6, 2011)

On September 6, 2011, Plaintiff received Misconduct B384789, which charged him with refusing to obey an order and being present in an unauthorized area. (Doc. No. 94 ¶¶ 2-3.) Plaintiff contends that he was issued this false misconduct in retaliation for aiding Diaz Cruz in preparing a grievance. As discussed supra, the Court has concluded that Plaintiff was engaged in protected activity when, pursuant to his duties as a block representative, he was assisting Diaz Cruz. The Court has also concluded that he suffered adverse action. However, a genuine issue of material fact exists as to whether the adverse action Plaintiff suffered is causally connected to his conduct in assisting Diaz Cruz.

Even if discipline is initiated in retaliation for a protected act, due process is satisfied when a plaintiff has an opportunity to confront and challenge the retaliatory misconduct reports. See Smith, 293 F.3d at 653-54. Under DC-ADM 801, witnesses are not permitted at an informal resolution of a misconduct, and "the inmate is not required to submit his version of events in

writing, but may explain the same orally." (Doc. No. 94 ¶ 11.) Here, however, the parties have presented conflicting evidence regarding whether Plaintiff had the opportunity to do so. Defendants have submitted the documentation for Misconduct B384784. (Doc. No. 96-1.) Based on this evidence, they maintain that Plaintiff participated in the informal resolution process and agreed with Defendant Granlund that a sanction of fourteen (14) days of cell restriction was appropriate. (Doc. No. 94 ¶¶ 13-14.) Plaintiff, however, maintains that he never received a copy of the misconduct prior to his meeting with Defendant Granlund, that Defendant Granlund ordered him to sign the Informal Resolution Action form and stated that he was giving Plaintiff the fourteen (14) days of cell restriction as a sanction, and that he had no choice but to sign the form because Defendant Granlund ordered him to do so. (Doc. No. 106 at 29.)

Given this, it is the Court's view that there exist genuine issues of material fact regarding whether Plaintiff received due process with respect to Misconduct B384784. Again, such issues of fact will likely turn on a credibility assessment, which the Court may not undertake at this stage. See Anderson, 477 U.S. at 252. Given the discrepancies in the parties' view of the events, and viewing the facts in the light most favorable to Plaintiff, a reasonable juror could conclude that Plaintiff was denied due process with respect to this misconduct. Accordingly, the Court will deny summary judgment as to Plaintiff's due process claim regarding Misconduct B384784.

### b. Misconduct B384789 (September 7, 2011)

On September 7, 2011, Plaintiff received Misconduct B384789, charging him with refusing to obey an order and being present in an unauthorized area. (Doc. No. 94 ¶¶ 22-23.) While Defendants contend that Plaintiff maintains he was working in his role as a block representative when this misconduct was issued (id. ¶ 35), Plaintiff asserts that he was not (Doc. No. 105 ¶ 35). In any event, the undisputed facts establish that Plaintiff received due process for

Misconduct B384789. Plaintiff appeared for a misconduct hearing on September 9, 2011. (Doc. No. 94 ¶ 27.) He pled guilty to being present in an unauthorized area but not guilty to the charge of refusing to obey an order. (Id.) The hearing examiner accepted the guilty plea and dismissed the other charge. (Id.) Plaintiff appealed, arguing that the misconduct "was retaliatory in nature," but his appeals were denied. (Id. ¶ 28.) Thus, even if Plaintiff were engaged in protected activity and Misconduct B384789 was issued in retaliation for such activity, the record reflects that Plaintiff received an opportunity to challenge Misconduct B384789. See Smith, 293 F.3d at 653-54; see also Thomas, 467 F. App'x at 97. Thus, the Court will grant summary judgment as to Plaintiff's due process claim regarding Misconduct B384789.

IV.    **CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion for summary judgment. (Doc. No. 93.) This matter will proceed to trial with respect to Plaintiff's First Amendment retaliation claim and his due process claim regarding Misconduct B384784 (the September 6, 2011 misconduct). An appropriate Order follows.